**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
——————————

Nos. 12-2301, 12-2354, 12-2675, 12-2875
——————————

UNITED STATES OF AMERICA,
                        Appellee/Cross-Appellant

v.


BILL JOHN-BAPTISTE, FRANCIS BROOKS, & ENID
EDWARDS

                        Appellants/Cross-Appellees
——————————

Appeal from the District Court
for the District of the Virgin Islands (D.V.I.)
(D.V.I. Criminal Action Nos. 3-10-cr-00036-001,
 3-10-cr-00036-002 & 3-10-cr-00036-004)
District Judge:  Honorable Curtis V. Gomez
——————————


Argued:  April 24, 2013

Before:  MCKEE, <u>Chief Judge</u>
and SCIRICA, VANASKIE, <u>Circuit Judges</u>

(Opinion filed: February 19, 2014)

Sonja Ralston (argued)
United States Department of Justice
Appellate Section, Criminal Division
Room 1264
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

      Counsel for Appellee/Cross-Appellant

Donnie M. King (argued)
1212 Bjerge Gade
Charlotte Amalie
St. Thomas, USVI 00802-000

George H. Hodge, Jr. (argued)
P.O. Box 803
Charlotte Amalie
St. Thomas, USVI 00804-000

Allison B. Duffie (argued)
Entin & Della Fera
110 Southeast Sixth Street
Suite 1970
Fort Lauderdale, FL 33301

      Counsel for Appellants/Cross-Appellees

---

## OPINION OF THE COURT

---

McKEE, <u>Chief Judge</u>

In this consolidated appeal, Francis Brooks, Enid Edwards, and Bill John-Baptiste challenge their convictions following trial before the District Court. All convictions stemmed from the defendants' alleged extortion, kidnapping, bribes, and drug trafficking while each served as law enforcement officers. Brooks and Edwards were employed with the Virgin Islands Police Department ("VIPD"), and John-Baptiste was employed by the Virgin Islands Port Authority ("VIPA"). Defendants challenge their convictions on various constitutional and evidentiary grounds. In

2

addition, the government cross-appeals the District Court's judgment of acquittal on certain counts. For the reasons that follow, we will reverse the District Court's judgment of acquittal as to counts 5, 6, 10, 11, 12, and 46, and affirm the judgment of the District Court with respect to all other counts.

## I. Background

This case presents a sordid picture of "law enforcement officers" who sought to enrich themselves rather than protect the public by engaging in a protracted pattern of criminality that included extortion, drug dealing and kidnapping, all at the expense of the residents of the United States Virgin Islands.

In September 2010, a federal grand jury issued a 53-count superseding indictment against the defendants, and the case proceeded to trial. At trial, the prosecution introduced the following evidence as to particular charges in the superseding indictment.

### A.    Evidence of Specific Crimes
#### 1.    Brooks and Edwards Distribute Six Pounds of Marijuana for Resale. (Counts 2 to 4)

Kelvin Moses testified that in 2005, Brooks and Edwards approached him in their police cruiser and sold him six pounds of marijuana for him to resell. Joint App. 643-46. Moses also testified that prior to this exchange, from 2000 to 2003 and from 2005 to 2007, he routinely paid money to Brooks and Edwards for information regarding other people who were cooperating with them.

#### 2.    Brooks and Edwards Impound a Truck and Extort Payment From The Owner. (Counts 5 to 12)

Kenneth Love testified that in 2007, Brooks and Edwards illegally impounded his truck. Edwards told Love that he would have to pay $1,200 to get his truck back, and further informed him that she had been "taking money . . . from people" for 19 years. Joint App. 572-73. Love also testified that Brooks and Edwards eventually arranged for

3

him to pay approximately $825 in cash to release the truck. Joint App. 603-04.

### 3. Brooks, Edwards and John-Baptiste Arrest a Taxi Driver and Hold Her in Custody Until her Boyfriend Pays for her Release. (Counts 24 to 33)

In April 2008, John-Baptiste arrested taxi driver, Yvese Calixte, for a parking violation. John-Baptiste proceeded to forcibly detain Calixte until VIPD officers arrived, handcuffed her, and placed her in a police car. John-Baptiste followed behind as the officers drove Calixte to a VIPD facility, and placed her in a holding cell where she remained for four to five hours. Joint App. 737-39. Calixte was eventually transferred to a downtown jail, where she was processed for booking. *Id.* at 743. Thereafter, John-Baptiste handcuffed Calixte and drove her to a shipping station, where they were met by Brooks, Edwards, and Calixte's boyfriend, Jossenel Morino. Calixte was finally released, but only after Morino paid $1,000 to Brooks and Edwards in exchange for her freedom.

### 4. Brooks Extorts Payment from Felon in Possession of a Firearm in Exchange for Not Arresting Him; Edwards and Brooks then Coerce Him into Selling Cocaine for Them (Counts 34 to 38 & 39 to 46)

John Lindquist, a convicted felon, testified that in 2009, Brooks approached him while Lindquist had a gun in his possession. In exchange for not arresting him, Brooks asked Lindquist for $2,000, which Lindquist paid over the course of the next month. Months later, Lindquist encountered Brooks again while carrying another gun. Lindquist testified that Brooks and Edwards gave him 4.5 ounces of crack cocaine to sell for them in exchange for not being arrested. After Lindquist sold the drugs, he paid Brooks $3,500 over the course of the following months.[1]

---

[1] Additionally, the following evidence was admitted for counts that were ultimately dismissed pre-verdict pursuant to defendants' Rule 29 motion for acquittal, *see* Joint Appx. 1311, 2102-2: (1) Elias Deeb, an undocumented Syrian

4

### B. Post Trial Motions.

At the close of trial, the jury convicted Brooks and Edwards of: conspiracy under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d) (RICO); conspiracy and extortion under the Hobbs Act, 18 U.S.C. §§ 1951(a) & (2); conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; distribution of and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); conspiracy, in violation of 14 V.I.C. § 551; extortion, in violation of 14 V.I.C. §§ 701 & 11; solicitation and receipt of a bribe, in violation of 14 V.I.C. §§ 403 & 11; and conflict of interest, in violation of 3 V.I.C. §§ 1102(3) & 1108 and 14 V.I.C. § 11. The jury convicted John-Baptiste of kidnapping and false imprisonment, in violation of 14 V.I.C. §§ 1051 & 11.

Following their convictions, defendants moved for judgments of acquittal pursuant to Rule 29, and for new trials pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The District Court granted defendants' Rule 29 motions as to counts 5, 6, 7, 10, 11, 12, 35, and 46. Thereafter, the District Court sentenced both Brooks and Edwards to 151 months' imprisonment to be followed by 3

---

immigrant who came to the United States in 2004 and was seeking asylum, testified that in 2004 Edwards offered to illegally obtain a driver's license for him. Joint App. 373. Deeb eventually became an informant for the FBI and DEA. Over the course of several meetings, he gave Brooks and Edwards $900 in cash and a CD player in exchange for the license. Joint App. at 394, 409-11, 418 (Counts 13 to 23); (2) A man going by the name of Troy Willock claims that in early 2008, Brooks and Edwards approached him and his friends while they sat outside a local bakery. (As we discuss below, there is a controversy over the identity of the man who actually testified at trial). The officers frisked the men and Brooks removed a Ziploc bag filled with marijuana from inside a man's pocket. However, no one was arrested (Counts 47 to 52).

years' supervised release. John-Baptiste was sentenced to 60 months imprisonment. These appeals followed.

## II. Discussion

We have jurisdiction to review a district court's final order and sentence under 28 U.S.C. § 1291 and 18 U.S.C. §§ 3731 & 3742.

### A. Sufficiency of the Indictment

Prior to trial, Brooks moved to dismiss the indictment because the government failed to identify the victims of each crime by name. According to Brooks, the indictment was invalid because it failed to provide him with sufficient information to prepare a defense, and to plead double jeopardy in case of future prosecution. Brooks renews this claim before us. This presents a legal question over which we have plenary review. *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007).

The Supreme Court has articulated a two-part test for measuring the sufficiency of an indictment. *Russell v. United States*, 369 U.S. 749, 763-64 (1962). Under this test, an indictment is sufficient when it (1) "contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet," *id.* at 763, and (2) allows him to "plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). We have recognized that "[a]n indictment must allege more than just the essential elements of the offense." *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007). However, "'[n]o greater specificity than the statutory language is required so long as there is sufficient factual orientation' to permit a defendant to prepare his defense and invoke double jeopardy." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (quoting *United States v. Kemp*, 500 F.3d at 280).

Brooks's argument is wholly grounded upon the second of the above-cited factors. He claims that he cannot assert a double jeopardy claim in the future because the indictment omits the names of the alleged victims. He

correctly notes that the indictment only references dates and the nature of the statutory offense charged in each count and does not include the name of any of the alleged victims. For example, Brooks highlights count 25, charging racketeering extortion in violation of 18 U.S.C. §§ 1951(a), 2. That portion of the indictment states:

> On or about April 2, 2008, at St. Thomas in the District of
> the Virgin Islands, ENID EDWARDS, FRANCIS BROOKS
> and BILL JOHN-BAPTISTE, while acting under color of
> official right as law enforcement officers of the Virgin
> Islands, did knowingly and intentionally affect commerce
> by extortion, and attempted to do so, and aided and abetted
> the same; namely, by unlawfully *requiring an individual*
> to pay money in order for the individual to recover a
> vehicle that had been towed pursuant to police directive
> authority.

Brooks App. at 36 (emphasis added).

The specificity required for an indictment to have "'sufficient factual orientation' to permit a defendant to prepare his defense and invoke double jeopardy," is not particularly onerous. *Huet*, 665 F.3d at 595 (quoting *United States v. Kemp*, 500 F.3d at 280). We have found that a defendant has sufficient notice to guard against a future prosecution in violation of the protection against double jeopardy if an indictment specifies the time frame for the criminal conduct. *See United States v. Huet*, 665 F.3d at 596 (reversing District Court's order dismissing an indictment where the relevant charge listed all required elements of the offense and where it also "specifie[d] the time period during which the violation occurred" by including the temporal description "on or about August 10, 2007, to on or about January 11, 2008.").

7

Although this indictment could easily have identified the alleged victims, it adequately specified the period in which the alleged crimes occurred, and set forth enough specificity about the crimes charged to protect against any subsequent attempt to charge Brooks with any crimes arising from the conduct that is the subject of this indictment. Accordingly, we conclude that the indictment was sufficiently specific to withstand a double jeopardy challenge.[2]

**B. John-Baptiste's Motion for Severance.**[3]

The jury returned a verdict finding John-Baptiste guilty of a single count (count 27), charging false imprisonment and kidnapping, and acquitted him of all other charges.[4]

---

[2] For example, the trial evidence identified the specific incident that occurred on April 2, 2008, as charged in count 25, as the extortion of $500 for the release of Calixte and her taxi.

In rejecting the challenge to the specificity of this indictment, we by no means condone the lack of precision that is evident on the face of this indictment. Nothing here suggests a need to withhold the identity of various victims because of any concerns for their safety, and the government has not attempted to defend the manner in which this indictment was drafted by asserting any such concerns. Although the specificity in the indictment is adequate, we would hope that greater care is taken in drafting indictments in the future.

[3] We review the denial of a motion to sever for abuse of discretion. *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005).

[4] Specifically, the jury acquitted John-Baptiste of interfering with interstate commerce (count 25), kidnapping for extortion (count 28), extortion (29), solicitation and receipt of a bribe (count 30), conflict of interest (count 32), aggravated assault and battery (count 32), and unlawful sexual contact (count 33).

John-Baptiste argues that the District Court erred in rejecting his pre-trial requests for severance under either F. R. Crim. P. 8(b) or 14(a). He argues that the government's case against him stemmed solely from the April 2, 2008 incident involving Calixte, and joinder in an indictment containing numerous other charges against other defendants allowed evidence admissible only against Brooks and Edwards to improperly "spillover" and be used against him.

A defendant seeking a new trial due to the denial of a severance motion must show that the joint trial led to "clear and substantial prejudice resulting in a manifestly unfair trial." *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (internal quotation marks omitted). "Mere allegations of prejudice are not enough," *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981), and defendants are "not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Thus, as we have previously explained, the critical issue when considering the potential for prejudice "is not whether the evidence against a co-defendant is more damaging but rather whether the jury will be able to 'compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility.'" *Davis*, 397 F.3d at 182 (quoting *United States v. Somers*, 496 F.2d 723, 730 (3d Cir. 1974)).

Here, John-Baptiste cannot establish that the evidence presented against Edwards and Brooks resulted in clear and substantial prejudice to his case. As noted, his sole contention is that the evidence against Edwards and Brooks was so extensive that it prevented the jury from reliably determining *his* guilt. *See* John-Baptiste Br. at 24. However, severance is not required simply because the evidence against his co-defendants may be stronger than the evidence against John-Baptiste. *See Urban*, 404 F.3d at 776 ("[A] defendant is not entitled to severance merely because the evidence against a co-defendant is more damaging than that against him.") (citation and internal quotation marks omitted); *United States v. Console*, 13 F.3d 641, 655 (3d Cir. 1993) ("Prejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant or some evidence adduced is more damaging to one defendant

than others."); *see also United States v. Dansker*, 537 F.2d 40, 62 (3d Cir. 1976).

Additionally, nothing suggests that the jury was unable to "compartmentalize the evidence as it relate[d] to separate defendants . . . . " *Davis*, 397 F.3d at 182, nor does John-Baptiste point to any evidence of that happening. We realize that only eight of the 54 counts in this indictment involved John-Baptiste and his involvement in the scheme to kidnap Calixte and hold her for ransom. However, the evidence that was relevant to those charges was easily separated and compartmentalized from testimony that was admitted regarding Edwards's or Brooks's involvement in the other charged offenses. *See, e.g.*, *Davis*, 397 F.3d at 182 (rejecting claim of prejudice where "facts [] relatively simple; all events occurred in a single evening; there are only three defendants; and there are no overly technical or scientific issues"). Finally, in instructing the jury, the District Court underscored that "[e]ach count and the evidence pertaining to it should be considered separately" and that "[t]he case of each defendant should be considered separately and individually." Joint App. 2142-43. Accordingly, we conclude that the jury could have compartmentalized the evidence on each count and each defendant as instructed.

### C. The Virgin Islands False Imprisonment and Kidnapping Statute

John-Baptiste also challenges the District Court's interpretation and application of 14 V.I.C. § 1051 (the Virgin Islands false imprisonment and kidnapping statute). He first claims that he District Court erroneously ignored the requirement that a defendant act "without lawful authority" in committing the offense. Second, John-Baptiste argues that the statute is unconstitutionally void for vagueness as interpreted because it provides no notice to law enforcement officers that they can be charged and convicted of kidnapping. The arguments border on frivolity.

14 V.I.C. § 1051 provides in pertinent part:

> Whoever without lawful authority confines or imprisons

10

> another person within this Territory against his will,
>
> or confines . . . or kidnaps another person, with intent to cause him to be confined or imprisoned in this
>
> Territory against his will . . . is guilty of kidnapping and shall be imprisoned for not less than one
>
> and not more than 20 years.

14 V.I.C. § 1051. As noted, the jury convicted John-Baptiste of one count of kidnapping for which he received a sentence of five years' imprisonment.

In arguing that the District Court erroneously interpreted "without lawful authority," John-Baptiste claims that, given his authority as a peace officer to make arrests with or without a warrant, any arrest he makes must necessarily be "within lawful authority." The argument is at best, misguided and at most, fanciful. This Virgin Islands statute provides peace officers with *lawful* authority to make arrests in routine circumstances—*e.g.*, when they have witnessed a public offense or when there is reasonable cause to believe that a person has committed a felony. *See* 5 V.I.C. § 3562.[5] No reasonable interpretation of the statute would

---

[5] In its entirety, the statute provides:

A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person—
    (1) for a public offense committed or attempted in his presence;
    (2) when a person has committed a felony, although not in his presence;
    (3) when a felony has in fact been committed and he has reasonable cause for believing the person to have committed it;
    (4) on a charge made, upon a reasonable cause, of the

convert it to a license to empower peace officers to act *outside* of this authority or detain someone for a criminal purpose. Indeed, the slightest modicum of common sense would negate the conclusion that the statute allows police officers to engage in criminality merely because they have been authorized to uphold the law. Yet, that is precisely the interpretation that John-Baptiste urges upon us.

Notwithstanding John-Baptiste's argument to the contrary, it is well-settled that law enforcement officers are subject to prosecution under criminal statutes when they act unlawfully or "without legal authority." *See, e.g.*, *Hampton v. United States*, 425 U.S. 484, 490 (1976) (plurality opinion) ("If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies . . . in prosecuting the police under the applicable provisions of state or federal law."); *see also Imbler v. Pachtman*, 424 U.S. 409, 429 (1976) ("This Court has never suggested that the policy considerations which compel civil immunity for certain government officials also place them beyond the reach of criminal law.").

A recent case decided by the First Circuit Court of Appeals is illustrative. In *United States v. Cortes-Caban*, 691 F.3d 1 (1st Cir. 2012), a divided panel of the First Circuit upheld the conviction of several police officer defendants for drug distribution under 21 U.S.C. § 841. The officers unlawfully transferred marijuana and cocaine to each other and outside parties as part of a conspiracy to plant evidence and conduct illegal searches and seizures. In affirming the convictions that followed, the majority explained in detail that while Congress had "carved out a specific exemption for distribution of controlled substances by law enforcement officers, but *only* the extent that they are 'lawfully engaged' in the enforcement of drug laws." *See Cortes-Caban*, 691

---

commission of a felony by the
party; or
(5) at night, when there is
reasonable cause to believe that
he has committed a felony.

5 V.I.C. § 3562.

F.3d at 20 (citing 21 U.S.C. § 885) (emphasis in original).[6] Because the officers in that case acted outside their lawful authority to enforce state and federal drug laws, they were subject to prosecution under federal drug laws the same as anyone else. *Id*. at 20-22.[7]

Similarly, the Virgin Islands "arrest by a peace officer" statute may only be read to grant officers authority to carry out arrests under specific circumstances. It was certainly not intended to immunize police officers from prosecution for such clearly illegal actions as restraining someone's liberty until a ransom is paid. Thus, where, as here, the government can show that a peace officer's conduct exceeded lawful authority to arrest and detain, that officer is subject to prosecution under *any* statute that criminalizes his/her conduct.

John-Baptiste makes an equally tenuous claim that the Virgin Islands kidnapping statute is unconstitutional as applied because it is so vague as to not give peace officers

---

[6] Indeed, a contrary result would have subjected police officers to prosecution for illegal distribution of a controlled substance when they gave an informant a controlled substance to sell as part of a controlled buy or "sting."

[7] The mere fact that the panel in *Cortes-Caban* was not unanimous does not undermine our belief that John-Baptiste's argument that every action of a Virgin Islands police officer is cloaked with legal authority is unreasonable. The issue that divided the panel in *Cartes-Caban* was whether the evidence of a drug "distribution" was sufficient to convict under 21 USC § 841(a)(1) because Congress had specifically authorized some distributions of controlled substances by law enforcement officers.

However, in his dissent, Judge Torruella specifically confirmed that he agreed that the evidence of an illegal distribution of drugs by a police officer was sufficient to convict the defendant of a criminal conspiracy. ("I agree that the record supports the government's allegations . . . that appellants' actions in planting drugs for the purpose of fabricating criminal cases constitutes a violation of 18 USC § 241."). 691 F.3d at 30.

notice that they could be "arrested and convicted of kidnapping for performing [their] official duties." John-Baptiste Br. at 20. We exercise plenary review over that question of law. *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1133 (3d Cir. 1992).

A statute is unconstitutionally vague if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" or "encourages arbitrary and erratic arrests and convictions." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "A statute can be void for vagueness not only on its face, but as applied, as a result of 'an unforeseeable and retroactive judicial expansion of narrow and precise statutory language.'" *United States v. Protex Indus., Inc.*, 874 F.2d 740, 743 (10th Cir. 1989) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964)).

We fail to see how a person of ordinary intelligence could possibly think that 14 V.I.C. § 1051 (or any other legislative enactment) authorizes a police officer to hold someone in custody for personal gain until a ransom is paid. As the government notes, the Virgin Islands false imprisonment and kidnapping statute closely tracks those of other jurisdictions. *See, e.g.*, 18 Pa. Conn. Stat. §§ 2901, 2903. Like the Virgin Islands' statute, these laws generally proscribe the removal, transport, or confinement of another person when carried out "unlawfully" or "without lawful authority." For John-Baptiste's vagueness argument to have any merit, we would have to conclude that no reasonable law enforcement officer could understand that s/he is proscribed from, *e.g.*, confining or imprisoning another person *without lawful authority*.

In fact, the contrary is true. Police officers can be exposed to civil liability under 42 USC § 1983. In addition, in order to lawfully exercise the police power of the state, they must understand the constitutional restraints imposed on the authority of the state and its agents. No reasonable interpretation of this statute, or any similar statute that we are aware of, could conceivably suggest that a police officer may

14

use his/her police power to extort a ransom in exchange for releasing someone who was being held in custody.

Here, as in any prosecution for kidnapping, the government had to prove beyond a reasonable doubt that the defendant acted without lawful authority. That burden is easily satisfied where the proof would allow a reasonable juror to conclude beyond a reasonable doubt that a person was held in official custody for private gain rather than in furtherance of an officer's official duties. Despite John-Baptiste's argument to the contrary, we see neither vagueness nor room for confusion about the scope of his legal authority in the text of 14 V.I.C. § 1051.

### D.    Defendants' Rule 29 Motions.[8]

The government appeals the District Court's grant of Brooks' and Edwards' Rule 29 motions on counts 5, 6, 10, 11, and 12 (relating to the extortion of Love) and 46 (relating to the Lindquist drug transaction). John-Baptiste also appeals the Court's denial of his Rule 29 motion (motion for judgment of acquittal). He argues there was insufficient evidence to sustain his conviction for kidnapping (count 27).

We exercise plenary review over a district court's ruling on a Rule 29 motion. *United States v. Applewaithe*, 195 F.3d 679, 684 (3d Cir. 1999). A defendant "challenging the sufficiency of the evidence" pursuant to Rule 29 "bears a heavy burden." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992). In reviewing a verdict for sufficiency of the evidence, we "'consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt.'" *United States v. Benjamin*, No. 11-2906, 2013 WL 1197767, \*3 (3d Cir. March 26, 2013) (quoting *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993)).

---

[8] "[T]he Rule 29 judgment of acquittal is a substantive [judicial] determination that the prosecution has failed to carry its burden." *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005).

### 1. John-Baptiste's Conviction for False Imprisonment and Kidnapping

As noted above, under the applicable statute, the government was required to prove beyond a reasonable doubt that (1) the defendant, intending the victim to be confined or imprisoned, (2) unlawfully took or carried away the victim for a substantial distance, (3) against the victim's will. 14 V.I.C. § 1051.

John-Baptiste argues that the government's evidence was insufficient to prove that he acted "without lawful authority" when he arrested Calixte. He claims that the government's evidence largely relied upon the testimony of VIPD Officer Rodney Querrard, who testified that the VIPD does not recognize an officer's authority to "unarrest" a detainee, as John-Baptiste arguably did once Morino paid the ransom to Edwards and Brooks to secure Calixte's release. John-Baptiste reasons that this testimony was irrelevant because there was no evidence to show that the policies and procedures governing the conduct of a Virgin Islands' police officer such as Querrard also governed officers of the Virgin Islands Port Authority Police. (As noted at the outset, John-Baptiste was a member of the Virgin Islands Port Authority Police). John-Baptiste also argues that even if Querrard's testimony was properly admitted, it was insufficient to show that his (John-Baptiste's) conduct satisfied the elements of the false imprisonment and kidnapping statute.

While we certainly agree that failing to follow departmental procedures is not tantamount to acting unlawfully, the record here contains sufficient evidence that John-Baptiste acted without lawful authority in detaining Calixte. Specifically, the government introduced the testimony of VIPA Chief Edred Wilkes, who stated that while John-Baptiste may have followed VIPA procedures in *arresting* Calixte, he (Wilkes) was "furious" when he learned that John-Baptiste released Calixte as a favor to Edwards. Joint App. 1083. Given that testimony, and testimony that John-Baptiste accepted money as a condition of releasing Calixte, the jury could reasonably conclude that even if the original seizure of Calixte was lawful, at some point during her detention, John-Baptiste decided to hold her until he

received a payment that can only be described as a ransom. From that point until the ransom was actually paid, he was holding her against her will and when he transported her to the location where the ransom was paid, the jury could well have concluded that she was being illegally detained and transported solely to facilitate receipt of the ransom he extorted for her release.

In reviewing a challenge to the sufficiency of evidence, "we are limited to determining whether the conclusion chosen by the factfinders was *permissible*." *United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984) (emphasis added). Viewed in the light most favorable to the government as verdict winner, we conclude that the evidence was more than sufficient to prove that John-Baptiste was guilty of false imprisonment and kidnapping as charged in count 27. Indeed, on this record, it is hard to imagine that the jury could have concluded anything else

## 2. Extortion and Conspiracy to Extort Under Federal and Territorial Law.

The government challenges the District Court's judgment of acquittal in favor of Brooks and Edwards after the jury convicted them on the charges set forth in counts 5, 6, 10, 11, and 12. Those counts all related to the officers' extortion of Kenneth Love, who, as noted above, paid Brooks and Edwards approximately $825 in return for the release of his truck after it was illegally impounded by Brooks and Edwards.

Counts 5 and 6 charged conspiracy and extortion under the Hobbs Act. To sustain the conspiracy conviction the government had to prove beyond a reasonable doubt that Brooks and Edwards knowingly entered into an agreement to interfere with interstate commerce by extortion under color of official right. 18 U.S.C. § 1951; *see also United States v. Inigo*, 925 F.2d 641, 652 (3d Cir. 1991). To prove extortion, the government had to prove beyond a reasonable doubt that Brooks and Edwards knowingly and willfully obtained Love's property through coercion resulting from the "wrongful use of actual or threatened force, violence, or fear, or under color of official right" and that this "obstruct[ed], delay[ed], or affect[ed] [interstate] commerce." 18 U.S.C. §

17

1951(a), (b)(2); *United States v. Manzo*, 636 F.3d 56, 62 (3d Cir. 2011).

### a. Extortion

The District Court granted the Defendants' post trial motion for judgment of acquittal, primarily because Love did not make his payment to recover his impounded truck *directly* to Edwards. Rather, Love testified that he "placed [approximately] $825 on the dashboard of [Edwards's] police vehicle" in exchange for obtaining his truck. Joint App. 36, 46. After Love retrieved his truck, he was given an itemized receipt for $825.

The government concedes that there was no direct evidence that Edwards took any of the $825 that Love paid, but argues that direct evidence was not required. *See United States v. Johnson*, 203 F.3d 139, 149 (3d Cir. 2002). The government contends that the prosecution presented sufficient circumstantial evidence at trial to sustain a Hobbs Act extortion charge. The government relies on the following evidence: (1) Edwards repeatedly told Love how much Love would have to pay to get his truck back; (2) Edwards told Love that she had been "taking money . . . from people" for 19 years; (3) Edwards ordered Love to put the money on her patrol car dashboard; and (4) Love later saw the tow-truck driver with only "a couple hundred dollars" in his hand. Gov. Br. at 48-49, Joint App. at 602. We agree that this was sufficient to convict Edwards of Hobbs Act extortion as charged in count 6.[9]

---

[9] The extortion charge in count 10 required the government to prove the same elements as the Hobbs Act with the exception of effect on interstate commerce. *See* 14 V.I.C. § 701. For the territorial bribery conviction in count 11, the government had to prove that Brooks and Edwards were public officials and that they asked for or received "any emolument, gratuity, or reward, or promise thereof" in exchange for an official act. *See id.* § 403. For the conflict of interest charge in count 12, the government needed to show that Brooks and Edwards were territorial officers who knowingly had an interest in a transaction they conducted that was "in substantial conflict with the proper discharge of [their] duties." *See* 3 V.I.C. § 1102(3). Because of these overlapping elements, this same

The jury obviously accepted Love's testimony that after he placed the $825 on Edwards's dashboard, he saw the tow-truck driver with only a couple hundred dollars in his hand. Joint App. 603. That testimony is circumstantial evidence that Edwards gave the tow-truck driver a "couple hundred dollars" for his role in the scheme, but that Edwards retained most of the $825 that Love placed in Edwards' patrol car. *See, e.g.*, *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989) ("The fact that evidence is circumstantial does not make it less probative than direct evidence."). This evidence, when properly viewed in the light most favorable to the government, would clearly allow any reasonable juror to conclude beyond a reasonable doubt that Edwards was guilty of extortion.

### b.      Conspiracy

The District Court's apparent reliance on the absence of direct evidence also caused it to err in granting a judgment of acquittal on the conspiracy charge. The court explained that it could not find evidence of an explicit agreement between Brooks and Edwards. It did not have to. The court stressed that Brooks remained silent while Edwards told Love that she "had been doing this for 19 years, taking money . . . from people." Joint App. 36. Thus, while Brooks was present in the patrol car while this conversation was going on, the Court noted that "mere presence at the scene of the crime or association with a criminal is not sufficient evidence of a conspiracy." *Id.*

The government concedes that "mere presence" is insufficient to support a conspiracy conviction, but underscores that the existence of an agreement can nonetheless be inferred from the circumstances surrounding a contract. *See United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (en banc) (holding that proof of an element of conspiracy can be shown by circumstantial evidence: "A case can be built against the defendant grain-by-

---

result as to counts 5 (discussed below) and 6 also applies to the District Court's decision to grant the defendants' motion to acquit on count 10 (extortion under territorial law); count 11 (bribery under territorial law); and count 12 (conflict of interest under territorial law).

grain until the scale finally tips." (quoting *United States v. Iafelice,* 978 F.2d 92, 98 (3d Cir. 1992)). Indeed, that proposition is so firmly established as to require no citation. We also agree with the government that the circumstances surrounding the interaction of Edwards and Brooks was certainly sufficient to establish an illicit agreement between the two to extort money from Love. The tow- truck driver involved in returning Love's car testified that Brooks spoke to him about the price he thought Love should pay for the release of the truck. Perhaps most damningly, Brooks sat silently by as Edwards explained that she had been taking money from people for 19 years. Therefore, *the unique circumstances here* establish something much more probative than "mere presence." The jury could certainly assume that if one police officer boasts of engaging in such illegal activity for nearly two decades in the presence of another police officer, there must be an agreement and that the agreement arises from a "longstanding pattern of activity and mutual trust" between the two. Here, that relationship can be discerned from the evidence that sustained convictions for other counts as well as the circumstances surrounding the release of the truck. *See United States v. Gibbs*, 190 F.3d 188, 199 (3d Cir. 1999) (holding that buyer shared conspiracy's goal of distributing cocaine, when circumstantial evidence showed he knew about the larger drug operation).[10]

---

[10] In *Gibbs*, we considered whether circumstantial evidence supported the conspiracy conviction of a defendant who alleged he merely bought drugs from a member of conspiracy, where the evidence included tape-recorded conversations between him and his codefendants, many of which were in code and had to be interpreted by an FBI agent. We held that knowledge of and intent to join a conspiracy can be imputed from certain factors such as the length of affiliation between the defendant and the conspiracy, or whether there is a demonstrated level of mutual trust: "when a defendant . . . has repeated, familiar dealings with members of a conspiracy, [he] probably comprehends fully the nature of the group with whom he is dealing . . . and is more likely to perform [acts] for conspiracy members in an effort to maintain his connection to them." *Id.* at 199-200. *See also United States v. Claxton*, 685 F.3d 300, 308-09 (evidence was sufficient to show defendant knew he was participating in

While we agree that the evidence supporting Brooks' and Edwards' conviction for conspiring to extort Love out of his property is more tenuous than the evidence that Edwards carried out the extortion plan, membership in a conspiracy need not depend on the level of cooperation that the District Court required here. *See United States v. Claxton*, 685 F.3d 300, 305 ("[A] finding of guilt in a conspiracy case does not depend on the government introducing direct evidence that a defendant was a knowing participant in the conspiracy; circumstantial evidence can carry the day."); *United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988) ("The elements of a conspiracy may be proven entirely by circumstantial evidence . . . ."). Thus, when viewed in the light most favorable to the government, we conclude that the District Court erred in granting judgment of acquittal on the conspiracy counts and that portion of the court's order will be reversed.[11]

### c. Conspiracy to Distribute Drugs Under 21 U.S.C. § 846

Count 46 charged Brooks and Edwards with conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. The charge relates to Brooks's and Edwards's interactions with John Lindquist. As noted above, the government introduced evidence that Brooks coerced Lindquist into selling crack cocaine for him. That evidence established that Lindquist received the crack cocaine from Edwards while he sat in the back of the officers' patrol car. Although Edwards handed the bag containing the crack cocaine to Lindquist and told him that Brooks expected to receive $3,500 for its contents,

---

criminal enterprise, as required to sustain conviction for conspiracy to possess cocaine with intent to distribute, where defendant picked up coconspirator at airport and transported coconspirator's luggage to another car, where evidence showed defendant knew the luggage contained money from illegal activities, and where conspiracy was operated for a number of years and involved multiple drug–related transactions).

Lindquist neither heard Edwards admit that she knew what was in the bag, nor saw her look into it.

To establish a conspiracy, the government must prove beyond a reasonable doubt: (1) a shared unity of purpose; (2) an intent to achieve a common illegal goal; and (3) an agreement to work toward that goal. *United States v. Boria*, 592 F.3d 476, 488 n. 12 (3d Cir. 2010). It may do so by direct or circumstantial evidence. *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005). We have also required proof that the defendant had knowledge of the conspiracy's illegal goal. *Id.* at 148.

We must therefore examine the record to determine whether the government set forth "drug-related evidence, considered with the surrounding circumstances, from which a rational trier of fact could logically infer that the defendant knew a controlled substance was involved in the transaction." *Boria*, 592 F.3d at 481.

In granting the defendants' Rule 29 motion on this count, the court reasoned that there was insufficient evidence for the jury to conclude that Edwards knew the contents of the bag. *See*, *e.g.*, *Cartwright*, 359 F.3d at 287. The District Court concluded that the evidence of a conspiracy was therefore insufficient against Edwards, and thus necessarily insufficient to prove beyond a reasonable doubt that Brooks conspired with her. Joint App. 29.

However, after defendants' trial, we decided *United States v. Caraballo-Rodriguez*, where we reexamined our test for evaluating the sufficiency of the evidence in drug conspiracy cases such as this. 726 F.3d at 431. In doing so, we recognized that we had previously overturned convictions in the absence of specific evidence of a defendant's knowledge of the identity of the illegal drugs s/he possessed even though circumstantial evidence may have been sufficient to establish that knowledge beyond a reasonable doubt. *Caraballo-Rodriguez*, 726 F.3d at 430-431. We acknowledged that our jurisprudence in this area had "failed to apply the deferential standard the law requires on review of sufficiency of the evidence challenges." *Id.* at 419. As we explained, we had previously sometimes examined the

evidence under a microscope – rather than reviewing the evidence as a whole and giving deference to the jury's verdict. *Id.* at 430. Our decision in that case clarified that the appropriate standard of review of the sufficiency of the evidence in a drug conspiracy case is the same as in all other cases: the jury's verdict must be assessed from the perspective of a reasonable juror, and must be upheld if the evidence was sufficient to allow a reasonable juror to conclude beyond a reasonable doubt that the defendant knew what was in his/her possession. *Id.* at 431 (abrogating *United States v. Wexler*, 838 F.2d 88, 92 (3d Cir. 1988), *United States v. Salmon*, 944 F.3d 1106, *United States v. Thomas*, 114 F.3d 403, *United States v. Idowu,* 157 F.3d 265, 268 (3d Cir. 1998), and *United States v. Cartwright*, 359 F.3d 281 (3d Cir. 2004)). Moreover, we specifically disavowed our prior analytical approach and reasoning – that the jury's verdict could not stand when the evidence was as consistent with other contraband, as it was with controlled substances. *Id.* at 432

Thus, while this issue may have presented a close question when the District Court originally decided it, it is now clear that the District Court's grant of this Rule 29 motion was not sufficiently deferential to the jury's verdict.

The evidence introduced at trial established that in 2009, Lindquist met with Brooks and Edwards, who arrived together in a car. Lindquist got into the car, and Edwards handed him a bag while informing him that Brooks wanted $3,500 for it. Lindquist looked into the bag, recognized its contents, and got out of the car. Over the course of the next several months, Lindquist sold the crack cocaine that was in the bag and gave the proceeds to Brooks. The government also argues: "based on the timing of their meeting, the bag's small size, flimsy construction, and light weight, and Edward's statement that 'Brooks wants $3,500 for this,' along with evidence of a 2005 incident involving the sale to Kelvin Moses of six pounds of marijuana, the jury could have concluded that Edwards knew the bag contained drugs." Gov. Br. at 51. We agree.

The same reasoning would have allowed the jury to conclude beyond a reasonable doubt that Edwards knew that

23

the illegal venture involved drugs. *See Caraballo-Rodriguez*, 726 F.3d at 433. In *Caraballo-Rodriguez*, the defendant responded to questions about whether he knew that a suitcase contained drugs by saying: "I didn't know it was drugs. I knew that it was something bad . . . Because nobody is going to pay five thousand dollars for picking up suitcases." *Id.* at 422. We reasoned that the jury could have concluded from the surrounding circumstances that the defendant knew the suitcases contained drugs. Similarly, here, the jury could reasonably conclude that these two *police officers* had enough common sense and knowledge to understand that if Brooks expected $3500 for the sale of whatever was in the paper bag, Brooks wanted Lindquist to sell the contents of the bag, and given the expected price, the bag most surely didn't contain a tuna fish sandwich.

Moreover, while mere presence at the scene of the crime or association with a criminal is not sufficient evidence of a conspiracy, se*e, e.g.*, *United States v. Tyson*, 653 F.3d 192 (3d Cir. 2011), the evidence here is – once again – substantially more than "mere presence." The events involving Lindquist took place in 2009, several years into a longstanding pattern of illicit activity between Edwards and Brooks. That activity had, in the past, involved recruiting third parties to sell drugs for them. *See, e.g.*, *United States v. Claxton*, 685 F.3d 300, 310 (3d Cir. 2012) ("[A]lthough the number of transactions here does not, on its own, prove [defendant's] knowledge of the character of the conspiracy, it does make it more likely that he knew the business he was about."). Given the circumstances here, the evidence was sufficient to sustain the jury's conclusion that Edwards understood that she was participating in a drug transaction. Accordingly, we conclude that the jury's verdict on count 46 did not "fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012). We therefore reverse the District Court's grant of the Rule 29 motion on that count, and the guilty verdict will be reinstated as to both Edwards and Brooks.[12]

---

[12] Since the evidence was sufficient to support the verdict on this count, we reject Edwards's argument that the District Court improperly attributed the entire 4.5 ounces of cocaine to her at sentencing.

## E.    Brooks's Rule 33 Motion for New Trial on RICO Conspiracy[13]

Brooks claims that the District Court erred in denying his Rule 33 motion for a new trial on his conviction for RICO conspiracy.  He argues that the jury considered evidence of acquitted conduct in convicting him on that count.  We review a denial of a motion for judgment of acquittal under Rule 33 for abuse of discretion.  *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008).  However, we again view the evidence supporting a conviction "in the light most favorable to the government and affirm[s] the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt."  *Benjamin*, 2013 WL 1197767, at *3.

To establish a conviction for a RICO conspiracy, the government must show: (1) that two or more persons agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity; (2) that the defendant was a party to or member of that agreement; and (3) that the defendant joined the agreement or conspiracy knowing of its objective to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity.  *United States v. Riccobene,* 709 F.2d 214, 224 (3d Cir. 1983).[14]

To establish a pattern of racketeering activity, the government must show that there was "'continuity plus relationship' among the predicate acts."  *United States v.*

---

[13] Under F. R. Crim. P. 33, a court may grant a new trial on motion of the defendant "if the interest of justice so requires."

[14] We note that on appeal Brooks does not expressly argue that the government failed to set forth evidence establishing his association with an "enterprise."  Accordingly, we need not discuss that element of the crime.  However, for a thorough discussion of the proof needed to establish a RICO enterprise, *see United States v. Bergrin*, 650 F.3d 257 (3d Cir. 2011).

*Mark*, No. 10-4075, 2012 WL 120092, at *3 (3d Cir. Jan. 17, 2012) (quoting *Sedima S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) (quoting S. REP. NO. 91-617, at 158 (1969))). Racketeering acts are "related" if the acts had the same or similar purposes, results, participants, victims or methods of commission. *Barticheck v. Fidelity Union Bank/First Nat'l State,* 832 F.2d 36, 39 (3d Cir.1987). "[S]poradic and separate criminal activities alone cannot give rise to a pattern for RICO purposes . . . ." *Mark*, 2012 WL 120092, at *3 (quoting *United States v. Eufrasio*, 935 F.2d 553, 565 (3d Cir. 1991).

Count 1 of the indictment charged a RICO conspiracy and included the following predicate acts: drug trafficking, alien harboring, kidnapping, bribery, and extortion. In support of these charges, the government relied on the testimony of Moses, Lindquist, Deeb, Willock, and Love (discussed in Section I.A). The testimony of these witnesses established that Brooks and Edwards regularly demanded money in exchange for drugs or property.

Before submitting the case to the jury, the District Court acquitted the defendants on all counts relating to Deeb and Willock, as well as several others. Joint App. 1311, 2125. Accordingly, the District Court instructed the jury that it had to agree on at least two of the remaining racketeering acts (drug trafficking conspiracy, drug trafficking, kidnapping, kidnapping for extortion, extortion, and bribery). The jury convicted Brooks (and Edwards) of the RICO conspiracy and twelve counts charging offenses that were predicate acts, but the District Court granted Brooks's Rule 29 motion as to four of those twelve counts (6, 10, 11, and 46). The jury did not specify, nor was it asked to specify, which of the predicate acts it relied upon to convict on the RICO conspiracy charge.

Brooks argues that the dismissal of four of the twelve counts relating to the predicate acts required a new trial, since the jury could have relied on dismissed counts to convict him of the RICO charge. He also claims that the lack of credibility of the particular witnesses casts doubt on the convictions on the remaining eight counts.

26

It is well established that if a jury convicts the defendant on two or more of the predicate acts constituting a RICO violation, the conviction on the RICO count itself will withstand a challenge even if the jury acquitted the defendant on several counts charging other predicate acts. *See United States v. Holzer*, 840 F.2d 1343, 1350-51 (7th Cir. 1988). Even where the jury's verdict is inconsistent, the RICO conviction must stand so long as there is sufficient evidence to prove that the defendant committed two or more predicate acts. *United States v. Vastola*, 989 F.2d 1318, 1331 (1993). As noted, even accounting for the four counts on which the District Court granted the Rule 29 motions, Brooks's (and Edwards's) *eight* convictions for offenses that were predicate RICO acts remain (including extortion, bribery, and drug trafficking). The convictions foreclose Brooks' challenge to the court's denial of his Rule 33 motion on the RICO offense charged in count 1. *Holzer*, 840 F.2d at 1350–51 ("[A] jury is presumed to act rationally, and a rational jury would convict a defendant of racketeering . . . [e]ven if it had exonerated [him] of all the predicate offenses charged except one act of extortion and one receipt of a bribe."). Moreover, Brooks's attack on the sufficiency of evidence amounts to little more than a challenge to the credibility of the witnesses.[15] *See United States v. Cothran*, 286 F.3d 173, 176 (3d Cir. 2002) (refusing to reconcile "inconsistencies" in testimony because "witness credibility [is] an area peculiarly within the jury's domain"). Thus, the District Court properly rejected his claim.

## F.     Prosecutorial Misconduct

Both Brooks and Edwards argue that prosecutorial misconduct occurred during the trial when the prosecutor withheld exculpatory evidence and suborned perjury. Their argument pertains to the government's use of three witnesses: Love, Deeb, and Willock. As we explain, this argument is unpersuasive.

### 1.     Kenneth Love—Identification of Brooks

---

[15] *See* Brooks Br. at 15-22.

At trial, Love identified Edwards but could not identify Brooks. Joint App. 570–71. Thereafter, during a break in Love's testimony, Love and an agent had lunch at the same pizzeria where Brooks and his family ate, and the agent pointed Love out. Joint App. 589. Brooks argues that this was improper because Love had not finished his testimony. Brooks Br. 23–24.

The agent's conduct was clearly improper, and the incident could have been problematic. However, the District Court competently handled the situation. Upon the parties' return to the courtroom, the Court held a hearing outside the presence of the jury to discuss what had occurred during the break. Since Love had not been able to identify Brooks in the courtroom prior to the incident, the Court dismissed any suggestion of a tainted identification and allowed the government to continue Love's direct examination. Joint App. 595-96. Thereafter, Love was not asked to identify Brooks, nor did he identify Brooks at any point during trial. *See* Joint App. 594–95.

Brooks also argues that Love falsely testified that he had read Brooks' name on Brooks' name tag or badge, Joint App. 581. That testimony was undermined by other officers who testified that VIPD officers' badges have numbers, but no names and that names are not displayed on uniforms. *See* Joint App. 1657–58. However, that conflicting testimony only raised a credibility issue that the jury was free to resolve. Moreover, Brooks fails to explain why the officers' testimony should be given more weight than Love's, and we agree with the District Court's decision to refrain from usurping the role of the jury by attempting to resolve this conflict in Brooks' favor. *See United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011) ("[I]t is the jury's province . . . to make credibility determinations and to assign weight to the evidence."); *United States v. Prejean*, 517 F. App'x 107, 109 (3d Cir. 2013) (jury free to discredit witness's testimony and instead believe evidence offered by other party).

Moreover, even if we assume that Love was not truthful about seeing Brooks's name on his badge, the jury was free to accept the balance of Love's testimony. *See United States v. Merlino,* 349 F.3d 144, 160 (3d Cir. 2003)

28

(noting that "a jury can believe some witness's testimony as to some aspects, and disbelieve others, or not believe any, or believe all."); *Barber v. CSX Distribution Svcs.*, 68 F.3d 694, 700 (3d Cir. 1009) (evaluation of witness credibility is exclusive function of jury, and jury can always choose to discredit testimony); *McCann v. Miller*, 502 F. App'x 163, 170 n.8 (3d Cir. 2012) (jury not required to believe all of the testimony offered by an interested witness).

### 2. Elias Deeb—Alleged Suppression of Exculpatory Evidence

Brooks also argues that the government engaged in prosecutorial misconduct by omitting an exculpatory portion of Deeb's recorded conversation with a federal agent. Joint App. 447-50. In order for Brooks to succeed, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Here, nothing in the record suggests that the prosecution's decision to only play a portion of the conversation between Deeb and a federal agent amounted to misconduct. The government introduced the *full* tape into evidence. On cross-examination, Brooks's counsel played the allegedly exculpatory conversation for the jury, and highlighted the fact that Deeb never discussed Brooks' involvement in the scheme to obtain a driver's license. Accordingly, even if it could be argued that the prosecution "suppressed" evidence by failing to directly present it to the jury, it cannot be said that the failure prejudiced Brooks.

### 3. Troy Willock—Controversy Surrounding Witness Identity

Lastly, Brooks and Edwards contend that the prosecution purposefully concealed the controversy concerning the identity of Troy Willock ("Willock 1"), who testified in relation to the marijuana theft charged in counts 48 to 52. Willock 1 was a cooperating witness who testified that in 2008, he saw Brooks "pocket a quantity of marijuana" taken from a dealer during a "shakedown." *United States v.*

29

*Edwards*, No. 2010-36, 2011 WL 5834241, *3 (D.V.I. Nov. 18, 2011).

Prior to trial, the government learned that the VIPD had files on two Troy Willocks with different fingerprints and photographs but the same name and birthday. The government claims that on the first day of trial, one of the prosecutors placed copies of Willock 1's National Crime Information Center (NCIC) report, along with his Pre-Sentence Report (PSR) for his pending drug charges, on defense counsels' table. Joint App. 2666-68. The government claims that both reports listed multiple social security numbers for Willock 1 and disclosed what the government knew about its witness at that time. Joint App. 2666-68. Defense counsel acknowledged having received the packets, but no defendant cross-examined Willock 1 about his identity. Joint App. 2470-22, 2474, 2477; *see* Joint App. 678-94.

In or about April 2011, another person using the name Troy Willock ("Willock 2") complained to the Social Security Administration in St. Thomas that Willock 1 had stolen his identity. Joint App. 2666-68. Later that month, Willock 1 appeared for sentencing pursuant to a guilty plea in an unrelated drug distribution case. Willock 1's attorney asked to withdraw on grounds that he "had reason to believe that Willock 1 is not who he claims to be." *Id.* Counsel also stated that he believed that Willock 1 had stolen Willock 2's identity.

On November 1, 2011, the District Court held a hearing to consider the defendants' motion for a new trial and determine whether the controversy surrounding Willock 1's identity had in any way affected this trial. Following the hearing, the Court denied the defendants' motion. The Court held that: (1) there was no specific evidence that Willock 1 had perjured himself at trial, as he testified that his name was "Troy Willock" and no conflicting evidence was introduced; (2) there was not sufficient evidence to show that, if Willock 1 committed perjury, the government knew of it before or during trial; and (3) if Willock1 committed perjury and the government was blameless, the perjury did not result in a

manifest injustice that would require upsetting the jury's verdict. Joint App. 2669.

On appeal, Brooks and Edwards claim that Willock 1's alleged perjury amounts to a due process violation because the government either knew or should have known that Willock 1 would offer false testimony. They claim that the District Court abused its discretion in denying their motion for a new trial because there was a "reasonable likelihood that the false testimony . . . affected the judgment of the jury." *United States v. Augurs*, 427 U.S. 97, 103 (1976). We reject their arguments for substantially the same reasons relied on by the District Court.

For such a claim to succeed, the defendants must show: "(1) [the government's witness] committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict." *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004). This record does not contain any evidence that would render the District Court's findings regarding the alleged perjury clearly erroneous. Discrepancies regarding his social security number notwithstanding, there is no direct evidence that Willock 1's name was anything other than "Troy Willock" when the District Court held an evidentiary hearing into the matter. A finding that the witness did not commit perjury would itself "preclude a finding of constitutional error." *Lambert*, 387 F.3d at 243.

The issue of knowledge is a thornier one. At the time of trial, the government certainly appears to have been aware that VIPD records for "Troy Willock" listed two individuals sharing the same name and birth date -- a fact that the District Court admitted should have raised red flags. *See Edwards*, 2011 WL 5834241, at *7 (noting odds that two individuals share same name and birth date is "far from impossible" but nonetheless a "highly improbable coincidence"). Moreover, even if the government did not know that one number belonged to another person, it also understood from NCIC reports that one of the two Willocks was claiming two separate Social Security numbers. *Id*. at *8. Ultimately, as

31

the District Court noted, it is clear that, at a minimum, the government should have investigated the identity of its witness further prior to Willock 1's appearance at the defendants' trial.

However, even assuming *arguendo* that Willock 1 committed perjury and/or that the government knew or should have known that, Willock 1's testimony could not have prejudiced the defendants' *entire* case. His testimony was only relevant to counts 48 to 52 and those charges were dismissed at the close of the government's case. Joint App. 1311. The transaction Willock 1 testified about did not pertain to the RICO conspiracy charged in count 1 for which Brooks and Edwards were convicted.

## G. Limitations on Cross-Examination and the Introduction of Character Testimony

Edwards, Brooks, and John-Baptiste all challenge several of the District Court's rulings regarding the admission of evidence. We review these claims for abuse of discretion. *See United States v. Starnes*, 583 F.3d 196, 213-14 (3d Cir. 2009). The District Court's exercise of discretion is commonly left undisturbed "unless no reasonable person would adopt [its] view." *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 519 (3d Cir. 2003) (internal quotation marks omitted).

### 1. District Court's Limiting of Cross-Examination of Government Witnesses

Three of the government's witnesses against Edwards were facing their own criminal charges when they testified. On cross-examination, Edwards sought to elicit information from the witnesses relating to any deals each made with the government in exchange for their cooperation. The District Court (acting *sua sponte*) permitted only questions going to the general contours of the sentence reductions and prohibited questions relating to the specific lengths of time they faced without cooperation. The Court's stated concern was that talk of specific terms of incarceration would prejudice the jury by "putting visions of jail and incarceration and penalties" into the jurors' minds as they deliberated, and cause confusion of

the issues because they would lack details as to the actual lengths of the witnesses' sentences.

Edwards claims that the District Court infringed on her constitutional right to confrontation by limiting the scope of the cross-examination of three government witnesses to nonspecific questions regarding the reduction of their sentences they received in exchange for their cooperation.

The Sixth Amendment gives a defendant the right to cross-examine the government's witnesses for possible bias. *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974). However, "[a] district court retains 'wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir. 2005) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). We review any restriction of cross-examination for abuse of discretion and will reverse only when the restriction "is so severe as to constitute a denial of the defendant's right to confront witnesses against him and . . . is prejudicial to [his] substantial rights." *United States v. Conley*, 92 F.3d 157, 169 (3d Cir. 1996) (internal quotation marks omitted). In assessing whether a limitation on cross-examination violated the Confrontation Clause, we inquire into: "(1) whether the limitation significantly limited the defendant's right to inquire into a witness's motivation for testifying; and (2) whether the constraints imposed fell within the reasonable limits that a district court has the authority to impose." *Mussare,* 405 F.3d at 169. The District Court's ruling was well within this parameter.

The District Court limited inquiry only into *specific* sentences that could have been imposed if the witnesses had refused to cooperate—a line of questioning that we have allowed trial courts to curtail. *See Mussare*, 405 F.3d at 170 (rejecting "categorical right to inquire into the penalty a cooperating witness would otherwise have received"). Indeed, the District Court allowed testimony regarding the witnesses' agreements to cooperate with the government and the fact that they expected to receive more lenient sentences

33

in return.  *See, e.g.*, JA 654-55 (exchange between defense counsel and Moses in which Moses admits, *inter alia*, that he "entered into an agreement with the government for what's referred to as substantial assistance").  We conclude that there was no abuse of discretion here.

### 2.    District Court's Limiting of Cross-Examination of Deeb

Edwards attempted to attack Deeb's credibility by cross-examining him about Deeb's alleged submission of a fraudulent insurance claim.  Edwards wanted to produce two witnesses who would have testified about this.  The District Court ruled that such extrinsic evidence was both impermissible under Fed. R. Evid. 608(b),[16] and barred by Fed. R. Evid. 403 because it would result in an unnecessarily confusing "mini insurance trial."  Because Deeb's compensation from the FBI and DEA was at issue, the District Court limited any inquiry related to an insurance payout to matters relating to his income, and not to the alleged fraud itself.  Edwards's again argues that the District Court's decision to limit defense counsel's cross-examination was a violation of her confrontation rights.  *See* Edwards's Br. at 19-23.

Edwards's confrontation argument as to Deeb must also fail.  In denying Edwards's defense counsel the opportunity to question Deeb as to his past insurance claim, the District Court stressed that it had never been established that Deeb acted fraudulently.  *See* Joint App. A 500-02.  Accordingly, the District Court acted well within its discretion in concluding that any questions this insurance

---

[16] Rule 608(a) provides that a party may attack a witness's credibility "by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character."  The rule prohibits "extrinsic evidence … to prove a specific instance[] of a witness's conduct in order to attack or support the witness's character for truthfulness…."  *See United States v. Murray*, 103 F.3d 310, 322 (3d Cir. 1997).

claim were potentially confusing, misleading, and risked unnecessary delay.

### 3. District Court's Exclusion of Out-of-Court Statements

During trial, John-Baptiste intended to have five witnesses, who were present during the incident with Calixte testify about that incident. This is the incident we have discussed above[17] and is the same incident that formed the basis of the charges against John-Baptiste. John-Baptiste insisted that his arrest of Calixte was the result of an altercation in which Calixte refused to move her unlawfully parked cab and then proceeded to physically attack him. The proffered testimony was offered to establish that the force used, the arrest, and the detention, were all reasonable under the circumstances. Moreover, John-Baptiste intended to use witnesses' recollection that, before the altercation with Calixte, he told the drivers of parked cars "125, 125"— which the witnesses understood was the fine for parking in the relevant loading zone ($125). The testimony was intended to show that he fairly and properly enforced VIPA rules.

The District Court sustained hearsay objections and limited the witnesses' testimony only to what they saw, rather than what they heard. The court also rejected John-Baptiste's argument that the statements were verbal parts of acts showing the state of mind of both parties and therefore not offered for the truth of the matter asserted. Because this incident, and Calixte's post-arrest complaints, form the basis of the allegations against John-Baptiste, he argues that the District Court's "mechanistic[]" application of the hearsay rule denied him due process, citing *Chambers v. Mississippi*, 410 U.S. 284 (1973). Jean-Baptiste Br. at 33-34.

John-Baptiste's argument relies on two exceptions to the hearsay rules. First, he claims that any statements he sought to introduce were not hearsay because they constituted "verbal acts"—a legally operative statement, like making a contract or a threat. *United States v. Tyler*, 281 F.3d 84, 98 (3d Cir. 2002). Second—as the government concedes—John-

---

[17] *See* Section I.A.

Baptiste's argument could also be characterized as invoking the state of mind exception to the hearsay rule.

Under either of these theories, John-Baptiste's arguments would fail. First, it is unclear how any of the testimony that John-Baptiste sought to introduce—which, he explains would have gone to show the "reasonableness of the actions of the officer"—could be characterized as "verbal acts." *See, e.g.*, *United States v. Tyler*, 281 F.3d 84, 98 (3d Cir. 2002) ("The hearsay rule excludes … statements which themselves 'affect[] the legal rights of the parties or [are] circumstance[s] bearing on conduct affecting their rights.'" (quoting Fed. R. Evid. 801(c))). Moreover, to the extent any testimony would have gone to show either John-Baptiste's or Calixte's frame of mind during their exchange, the government correctly notes that other *non*-hearsay testimony regarding observations adequately informed the jurors of the confrontation.—"[John-Baptiste] approached her car; she threw a drink can at him; he reached for the door handle; he pulled her out; she kicked him; they scuffled; he put handcuffs on her…." Gov. Br. at 33. Accordingly, the District Court acted within the bounds of its discretion when it foreclosed the use of this testimony.[18]

### 4.   District Court's Refusal to Allow John-Baptiste to Cross- Examine VIPA Chief Wilkes on Calixte's Prior Statements

On cross-examination of VIPA Chief Edred Wilkes, John-Baptiste's defense counsel asked a series of questions attempting to show that Calixte had made statements inconsistent with her prior testimony. The District Court refused to allow this line of questioning because it constituted

---

[18] Moreover, John-Baptiste's argument misses the force of the Calixte incident. That incident resulted in criminal charges not because of the initial seizure and detention which may have been appropriate as well as legal. However, despite the legality of the initial arrest, as explained above, it is clear on this record that at some point after she was arrested, John-Baptiste continued Calixte's detention in order to extort a ransom for her release. *That* is the criminality, not the initial arrest and detention.

improper impeachment under Fed. R. Evid. 613. Rule 613 required that Calixte first be given the opportunity to "explain or deny" any extrinsic evidence of a prior inconsistent statement. Joint App. 1120-23. John-Baptiste claims that the District Court's ruling was erroneous and contributed to the denial of his due process rights. The argument is meritless as the Court's ruling was clearly consistent with Rule 613 and well within the Court's discretion. *See United States v. Saada*, 212 F.3d 210, 221 (3d Cir. 2000) ("Rule 613 requires that a witness be given the opportunity to admit or deny a prior inconsistent statement before extrinsic evidence of that statement may be introduced.").

### 5. Government's use of Deborah Harrigan's Testimony to Rebut Edwards's Alibi Evidence

Edwards claims that the District Court erred by permitting the government to introduce testimony from Deborah Harrigan, because defense counsel had not received adequate notice of her testimony as required by Fed. R. Crim. P. 12.1. Edwards Br. at 6-7.

Harrigan is a VIPD payroll custodian who rebutted Edwards's claim that she was away for nearly all of 2005. Harrigan testified that Edwards worked VIPD shifts from August 22 through August 31, 2005. Edwards did provide notice of an alibi in accordance with Fed. R. Crim. P. 12(a) as to September 4-18, 2005 (when the drug transaction alleged in counts 3 and 4 took place). However, at trial, Edwards testified that she was away for nearly all of 2005 and that "from August to September" she was in Antigua. Joint App. 1760.

The court properly allowed the government to expand the scope of Harrigan's testimony to address Edwards' expanded alibi. Federal Rule of Criminal Procedure 12.1(3) grants courts the discretion to admit or prohibit a witness's testimony if a party fails to provide the notice required by 12.1(a). The court may grant an exception to the notice requirements "[f]or good cause." *Id.* 12.1(d). Accordingly, the rule provides the district court with discretion and acts to

prevent surprise at trial. Harrigan's testimony was properly admitted in response to Edwards' own failure to give adequate notice for her alibi. *United States v. Carter*, 756 F.2d 310, 312 (3d Cir. 1985). Moreover, Edwards was paid for the period in question, and presumably knew that time sheets reflecting that she was on duty during that period would be available to offer into evidence. Thus, she cannot seriously claim that she was surprised by Harrigan's testimony. Accordingly, we conclude the District Court acted within its discretion in allowing Harrigan's testimony regarding Edwards's whereabouts in August 2005 without prior notice from defense counsel.

## V. Conclusion

For the foregoing reasons, we will affirm the District Court's judgment of conviction as to each defendant. We will reverse the District Court's ruling acquitting Brooks and Edwards of conspiring to distribute a controlled substance (count 46). We also reverse the District Court's ruling acquitting Brooks and Edwards of extortion and conspiracy to extort (counts 5, 6, 10, 11, and 12). Accordingly, we will vacate and remand with directions that the District Court reinstate the jury's verdict of conviction and proceed to resentencing.