NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2157
_____


UNITED STATES OF AMERICA

v.

JAMES LIGNELLI,
Appellant


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-11-cr-00234-001)
District Judge: Honorable Terrence F. McVerry
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 9, 2016

Before: CHAGARES, KRAUSE, and SCIRICA, <u>Circuit Judges</u>

(Filed: August 12, 2016)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SCIRICA, *Circuit Judge*.

James E. Lignelli appeals from his jury conviction and 42-month sentence for aiding and abetting bank fraud.[1] We will affirm.

## I.[2]

Lignelli is a real estate appraiser. In this capacity, he prepared fraudulent appraisals that clients used to deceive banks into issuing unsubstantiated loans.

## A.

In 2002, Michael Pope paid $269,000 to purchase a residential property located on Sugar Camp Road in Peters Township, Pennsylvania (the "Sugar Camp Property"). In 2004, he used a false appraisal to sell the property in a sham transaction for $1.2 million. The purchaser, who was in on the scheme, was a business associate whose company Pope wanted to invest in. To raise investment funds, Pope had arranged for the associate to buy the property at an inflated price using a mortgage loan far exceeding the property's value. Then, because his business associate did not want to remain the owner, Pope planned for a straw buyer to procure a similar mortgage loan, buy the property, and then allow the mortgage to default.[3] For this scheme to work, Pope needed another false appraisal.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] Since we write solely for the benefit of the parties, we recount only those facts relevant to the issues before us.

[3] A straw buyer is a third party used to perpetrate fraudulent transactions by purchasing an item in place of the principals. STRAW MAN, Black's Law Dictionary (10th ed. 2014).

In 2005, Pope asked Lignelli to appraise the Sugar Camp Property at $1,230,000. He shared with Lignelli a copy of the prior appraisal and told him he wanted the new one to be identical. Pope asked Lignelli to misrepresent the property as completed and to not take photographs of the interior. Lignelli toured the property. Its interior was approximately thirty-percent complete.

On February 25, 2005, Lignelli appraised the Sugar Camp Property as a fully constructed house worth $1,237,000. For comparables, he selected the three properties in Peters Township netting the highest sales prices of the previous year. Pope submitted the appraisal to Bank of America ("BoA") on behalf of the straw buyer. BoA issued a loan. One month later, Pope used the same appraisal to apply for a home equity line of credit from JPMorgan Chase ("JPMC"). JPMC approved the application. Neither the mortgage nor the line of credit were repaid.

B.

In 2004, Micheal Staaf asked Lignelli to appraise an office building on Perry Highway in Pittsburgh, Pennsylvania (the "Perry Highway Property"). Staaf had made plans to purchase the property for $1.85 million, but wanted an appraisal valuing it at $2.45 million to get a larger mortgage loan. Lignelli prepared an appraisal enabling Staaf to carry out his plan.

In 2005, Staaf asked Lignelli to appraise the Perry Highway Property again, but this time for $3.5 million. He wanted to obtain a cash out refinance loan using the property as collateral. An inflated appraisal would allow him to pocket any funds

3

exceeding the cost of the property. Lignelli complied. He misrepresented the property's condition and selected unsuitable comparables. Staaf used the appraisal to obtain a loan from S&T Bank. He failed to repay the loan.

C.

In 2008, Staaf hired Lignelli to appraise an office building on Brodhead Road in Moon Township, Pennsylvania (the "Brodhead Road Property"). Staaf had purchased it two years beforehand for $1,087,500 and now wanted to sell it for $3.2 million in a sham transaction to his father. Lignelli appraised the property accordingly. As before, he misrepresented its condition and selected dissimilar comparables. Staaf used the appraisal to apply for financing, but was unsuccessful.

A federal grand jury indicted Lignelli on five counts. Counts One, Two, and Three concerned the Sugar Camp Property. The indictment alleged Lignelli (1) conspired with Pope to commit bank fraud by agreeing to falsely appraise the property, 18 U.S.C. § 1349, (2) aided and abetted bank fraud by preparing a false appraisal that Pope used to obtain a mortgage from BoA, *id.* § 1344(1)-(2), and (3) aided and abetted bank fraud when Pope later used the same appraisal to secure a home equity line of credit from JPMC, *id.* Count Four concerned the Perry Highway Property. The indictment alleged Lignelli aided and abetted bank fraud when he appraised the property for a second time, enabling Staaf to get a cash out refinance loan from S&T Bank. *Id.* Count Five concerned the Brodhead Road Property. The indictment alleged Lignelli conspired with Staaf to commit bank fraud by agreeing to falsely appraise the property. *Id.* § 1349.

4

A jury found Lignelli guilty of Counts Two, Three, and Four. It acquitted him of Counts One and Five. Lignelli appealed.

## II.

## A.

Lignelli contends the evidence is insufficient to support his conviction on Count Three for aiding and abetting Pope's fraudulent acquisition of a home equity line of credit from JPMC in violation of 18 U.S.C. § 1344. He raised this issue in a motion for judgment of acquittal. The District Court denied the motion.[4]

"We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Evidence is insufficient to support a jury verdict only if it could not permit a rational trier of fact to find guilt beyond a reasonable doubt. *United States v. Benjamin*, 711 F.3d 371, 376 (3d Cir. 2013). Sufficient evidence can be entirely circumstantial. *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010). We must construe the evidence in the light most favorable to the government. *Id.*

At a minimum, a conviction under section 1344 requires the government to prove the defendant (1) knowingly engaged in a fraudulent scheme (2) with specific intent to

---

[4] Our standard of review is plenary when evaluating a district court's denial of a motion for judgment of acquittal based on a claim of insufficient evidence. *United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011).

5

obtain money or property belonging to a federally insured financial institution.[5] *Loughrin v. United States*, 134 S. Ct. 2384, 2389 (2014). Section 1344 focuses on the fraudulent scheme, not on its consequences. *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987).

The evidence is sufficient to support the jury's verdict on Count Three. Lignelli does not dispute the evidence showing he falsely appraised the Sugar Camp Property. What he denies is any role in the scheme to defraud JPMC. But the evidence is probative that Lignelli adjusted his appraisal by falsely representing that the Sugar Camp Property was occupied when it was vacant. This is significant because a home equity line of credit is secured by the borrower's principal residence, meaning the property must be occupied. The government's evidence revealed multiple versions of Lignelli's appraisal. One version, under a cover sheet dated February 23, 2005, described the Sugar Camp Property

---

[5] The statute provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

as vacant. Another, under a cover sheet dated March 16, 2005, described the property as occupied. The change in occupancy status is the only difference between these two versions. Construing the evidence in the light most favorable to the government, a juror could infer beyond a reasonable doubt Lignelli's reason for adjusting the occupancy status was to make the appraisal suitable for a loan requiring the Sugar Camp Property to be occupied. It is immaterial whether he knew JPMC would be targeted. It is enough that Lignelli knowingly participated in a fraudulent scheme and that he did so with the intent to deprive a bank of its property.

B.

Lignelli contends the court committed plain error by misinstructing the jury on the good faith defense. According to Lignelli, the jury instructions restricted the application of the defense to the bank fraud charges in Counts Two, Three, and Four.[6]

When reviewing the accuracy of a particular jury instruction, we do not consider it in isolation but rather as part of the jury instructions in their totality. *United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006). Even if the instruction were improper, "it is a rare case in which an improper instruction will justify reversal of a criminal conviction

---

[6] We review for plain error because Lignelli did not preserve this issue by objecting at trial. Fed. R. Crim. P. 52(b). To establish plain error, an appellant must identify (1) an error, (2) that is clear, and (3) that prejudices the defendant's substantial rights. *Johnson v. United States*, 520 U.S. 461, 466–67 (1997). Even where these three conditions are met, our discretion to grant relief is limited to errors that "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 467.

when no objection has been made in the trial court." *Id.* at 655 (quoting *United States v. Gordon*, 290 F.3d 539, 545 (3d Cir. 2002)).

The District Court explained the good faith defense and then used conspiracy as an "example" of how the defense might apply:

> If you find from the evidence that Mr. Lignelli acted in good faith . . . or if you find for any other reason that the Government has not proved beyond a reasonable doubt that Mr. Lignelli acted knowingly and with the intent to commit bank fraud, you must find him not guilty of the offense of conspiracy to conspire to commit bank fraud.

A1857.

The District Court's instruction was not erroneous. It did not instruct the jury to limit its consideration of good faith to the conspiracy offenses. Its discussion of the conspiracy offense was an example of how the defense might apply. It correctly explained the good faith defense as merely a restatement of the government's burden to establish Lignelli acted knowingly and intentionally. *See United States v. Gross*, 961 F.2d 1097, 1103 (3d Cir. 1992) (adopting the prevailing view of "the good faith instruction as simply a reiteration that the government must carry its burden in demonstrating that the accused acted knowingly and willfully").[7] We see no error, let alone plain error.

---

[7] As the government argues in its brief, Lignelli's claim is also undermined by the invited-error doctrine. At trial, he requested an instruction describing good faith as a defense to the "offenses of Conspiracy to Commit Bank and Wire Fraud and Bank Fraud [sic]." A2197. While Lignelli now contends this "awkward" language referred specifically to all counts, the record establishes otherwise. The conspiracy charge in Count One applied to bank fraud, whereas the conspiracy charged in Count Five applied

8

C.

Lignelli contends the court erred when it denied his motion to suppress statements made during pre-indictment interviews. Federal agents visited him on three occasions before advising him he was the subject of an investigation. They used a "soft shoe" strategy, hoping to solicit information. At trial, Lignelli moved to suppress his interview statements as involuntary. The court denied his motion.[8]

Involuntary statements are inadmissible. *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005). A statement is involuntary if the speaker's will was overborne by coercive law enforcement conduct. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973). A statement is voluntary "if, when viewed in the totality of the circumstances, it is the product of an essentially free and unconstrained choice by its maker." *Jacobs*, 431 F.3d at 108.

Lignelli's statements were voluntary. As the District Court found, the agents did not tell him his statements would be kept confidential. Nor did they tell him he was not

_____

to bank *and* wire fraud. Given this difference, his requested instruction can be read as applying solely to Counts One and Five. The trial transcript confirms this reading. When discussing the District Court's good faith instruction, counsel understood it as applying to "Counts One and Five," and noted, "[s]o on those counts, it's clear your language is correct and that you chose [sic], I think we recommended this language from the pattern." A1797–98. It is likely that Lignelli invited the error, but we need not decide this question, nor base our decision on the invited-error doctrine. *See United States v. W. Indies Transp., Inc.*, 127 F.3d 299, 311 (3d Cir. 1997).

[8] Whether a statement was voluntary is a question of law that we review de novo. *United States v. Jacobs*, 431 F.3d 99, 104 (3d Cir. 2005). But we review the facts upon which the District Court based its decision for clear error. *Id.*

the target of an investigation. As the District Court noted, "[a]t most, they used a ruse of friendliness to encourage Lignelli to share information." A8. These findings are not clearly erroneous. Although the agents were friendly and made Lignelli think they wanted his advice as an expert in the appraisal industry, this is not the type of coercive police conduct courts have found sufficient to render statements involuntary. *See, e.g.*, *United States v. Swint*, 15 F.3d 286, 290 (3d Cir. 1994) (holding statements were involuntary where the defendant believed the interview was "off-the-record" and made the statements in the presence of officers armed with "clearly visible" weapons); *United States v. Walton*, 10 F.3d 1024, 1026 (3d Cir. 1993) (concluding a confession was involuntary where an agent "assured" the defendant his statements would not be used against him).

### D.

Lignelli contends the court abused its discretion when it admitted testimony from the manager of the Perry Highway Property about a conversation he overheard between Staaf and an "unidentified" man. The property manager testified he was sitting in his office when he heard Staaf "talking to a gentleman about the [Perry Highway Property] and the appraisal." A1221. Staaf told the man he "need[ed] this building to come in three million dollars" because he wanted to extract money from the property. *Id.* The man responded, "I'll pull comps. I'll make it happen." *Id.* at 1222. In relating this conversation, the property manager emphasized, "again, I don't know who the guy was . . . ." *Id.* He did not recall when the conversation occurred. *Id.* at 1226. Lignelli objected to

10

this testimony, but the District Court admitted it under the co-conspirator exception to the rule against hearsay. *Id.* at 1214–20. According to Lignelli, this testimony is inadmissible because there is no evidence identifying him as the man to whom Staaf was speaking.[9]

The District Court found admissible the unidentified man's promise to "pull comps" and "make it happen" under the co-conspirator exception to the rule against hearsay. *See* Fed. R. Evid. 801(d)(2)(E). We see no abuse of discretion. Under that exception, a statement is not hearsay if it was made by a "coconspirator during and in furtherance of the conspiracy." *Id.* A statement by an unknown speaker can qualify for this exception if the government establishes the speaker was likely a member of the conspiracy alleged. *United States v. McGlory*, 968 F.2d 309, 335 (3d Cir. 1992) ("What is essential is that the government show that the unknown declarant was more likely than not a co-conspirator." (quoting *United States v. Helmel*, 769 F.2d 1306, 1313 (8th Cir. 1985) (brackets omitted))). Here, there is sufficient evidence to conclude the unidentified man was part of the alleged conspiracy to falsely appraise the Perry Highway Property. Staaf told him he needed an appraisal valuing the property at three million dollars in order to "pull out money." A1221. The evidence is also sufficient to establish the unidentified man's statement was made in furtherance of the conspiracy. In response to

_____

[9] We review a district court's evidentiary rulings for abuse of discretion. *United States v. John-Baptiste*, 747 F.3d 186, 211 (3d Cir. 2014). "The District Court's exercise of discretion is commonly left undisturbed 'unless no reasonable person would adopt its view.'" *Id.* (quoting *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 519 (3d Cir. 2003)) (brackets omitted).

11

Staaf's request, he assured that he would select comparables and "make [the appraisal] happen." *Id.* at 1222. Accordingly, the court did not abuse its discretion by admitting the statement under Rule 801(d)(2)(E).

Lignelli also contends the District Court abused its discretion by admitting testimony from Staaf concerning his prior dealings with Lignelli. Before trial, the District Court granted in part Lignelli's motion to exclude details about appraisals he performed prior to appraising the three properties at issue in the indictment. But the District Court denied the motion to the extent it would restrict the government from presenting evidence about how the relationship between Lignelli and the alleged coconspirators developed. At trial, the government asked Staaf why he hired Lignelli. Staaf testified, "He always got the number that I needed." *Id.* at 990–91. Later, the government asked Staaf why he was not concerned about the poor condition of the Perry Highway Property. Staaf answered, "I had used [Lignelli] before, and he had come through with me on appraisal numbers." *Id.* at 1007. Lignelli objected, but the court declined to strike the testimony.

The District Court did not abuse its discretion in allowing this testimony. In its pretrial order, the court specified the government would be permitted to elicit testimony about how Lignelli became acquainted with the alleged coconspirators. Staaf's remarks about why he approached Lignelli to appraise the Perry Highway Property falls within this scope—it is probative evidence about how their relationship developed.

E.

Lignelli contends it was improper for the District Court to consider at sentencing his alleged conduct in the scheme to obtain a fraudulent mortgage on the Brodhead Road Property because the jury acquitted him of the charge arising from those allegations (Count Five). The court determined his sentencing range by reference to § 2B1.1 of the 2014 United States Sentencing Guidelines ("U.S.S.G."), which correlates a defendant's offense level to the monetary loss the defendant caused. The court calculated the applicable loss amount to include the approximately $1.5 million targeted in the attempt to fraudulently mortgage the Brodhead Road Property. Including this figure increased Lignelli's offense level by two. U.S.S.G. § 2B1.1(b)(1)(J).[10]

Sentencing courts may consider conduct for which the defendant was acquitted so long as the government has proven that conduct by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 149 (1997). In *Watts*, the Supreme Court explained that considering acquitted conduct is permissible under 18 U.S.C. § 3661, "which codifies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information." *Id.* at 151. It also explained the discretion to consider such conduct is consistent with case law holding that courts should have access

---

[10] We review for plain error because Lignelli did not object to this alleged procedural error at the sentencing hearing. *See United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014). Lignelli contends we should review for abuse of discretion because his objections to the Presentence Investigation Report preserved the alleged error. We would affirm under either standard of review.

13

to as much information as possible when making sentencing decisions. *Id.* at 151–52

(citing *Williams v. New York*, 337 U.S. 241, 247 (1949)). The Supreme Court interpreted

the U.S.S.G. as reinforcing this principle. *Id.* at 152–53 (citing U.S.S.G. §§ 1B1.3,

1B1.4).

For purposes of determining Lignelli's guideline range, "relevant conduct"

includes "all acts and omissions . . . that were part of the same course of conduct or

common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).[11] "For

two or more offenses to constitute part of a common scheme or plan, they must be

substantially connected to each other by at least one common factor, such as common

victims, common accomplices, common purpose, or similar modus operandi." *Id.* n.9(A).

It was not error for the District Court to consider at sentencing the money targeted

in the scheme to fraudulently mortgage the Brodhead Road Property. As the District

Court found, a preponderance of the evidence establishes Lignelli falsely appraised the

Brodhead Road Property in support of Staaf's efforts to obtain a mortgage. This was

"relevant conduct" because it was part of the same "common scheme or plan" as the

conduct underlying his conviction for aiding and abetting bank fraud on the Perry

Highway Property (Count Four). It involved the same purpose (bank fraud), accomplice

(Staaf), and modus operandi (false appraisal). *See* U.S.S.G. § 1B1.3 n.9(A). The District

Court did not err by considering this conduct at sentencing.

---

[11] This subsection applies to offenses that require grouping of multiple counts. U.S.S.G. §
1B1.3(a)(2). Lignelli's multiple fraud offenses require grouping. U.S.S.G. § 3D1.2.

## III.

For the foregoing reasons, we will affirm Lignelli's judgment of conviction and sentence.