**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2085
_____

UNITED STATES OF AMERICA

v.

TYLER EUGENE, a/k/a Lucc,
Appellant
_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 3:18-cr-00030-008)
District Judge: Honorable Timothy J. Savage
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 8, 2025

Before: HARDIMAN, BIBAS, and PORTER, *Circuit Judges*.

(Filed: December 10, 2025)
_____

OPINION*
_____

HARDIMAN, *Circuit Judge*.

Tyler Eugene appeals his judgment of conviction for racketeering conspiracy and

other racketeering and firearms-related offenses. Eugene contends that the verdict was

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

against the weight of the evidence and that the District Court erroneously admitted certain evidence. Unpersuaded by either argument, we will affirm.

I

A grand jury returned a fifth superseding indictment charging Eugene and five co-defendants with committing and conspiring to commit drug, firearm, racketeering, and other crimes. The indictment alleged that Eugene was a member of a violent drug-trafficking enterprise in the U.S. Virgin Islands based in the Williams Delight neighborhood of St. Croix and led by co-defendant Paul Girard.

At trial, the Government's case against Eugene relied mostly on the testimony of Robert Brown, a member of the enterprise who cooperated with the Government. Brown testified that Eugene's primary role in the enterprise was to kill members of a rival crew based in Frederiksted and led by Ivan James. Brown implicated Eugene in three murders or attempted murders of James's crew. First, in December 2015, Brown was on the phone with men who shot at one of James's crew and heard Eugene declare that he had shot the target. Then, in February 2016, Brown committed a drive-by murder while Eugene was in the car and armed with an AK-47. Finally, in March 2016, Brown shot at James's men while riding around with Eugene, who also was armed.

Brown acknowledged on cross-examination that he had made prior statements to law enforcement that contradicted his trial testimony. He also admitted that his role in the Girard enterprise often required him to lie, that he had a lengthy criminal past, and that he made a deal to testify for the Government to help himself at sentencing.

In addition to Brown's testimony, the Government introduced recordings of five

2

telephone calls among Girard, Brown, Eugene, and other members of the enterprise in which they plotted to kill Girard's ex-girlfriend, Taneisha Williams. On these calls, Brown and others informed Girard that Williams had been speaking ill of him on social media and "working with the enemies," meaning James's crew. Supp. App. 537. Girard then told Eugene that Williams "need[s] to get [killed]" for "riding with the other team." Supp. App. 547. Later, Girard asked Eugene to fly to St. Thomas and work with other members of the enterprise to kill Williams. Eugene agreed to do so.

The District Court admitted these recordings over Eugene's objection. He argued that because the plot to kill Williams was not charged in the indictment, evidence about it was irrelevant. Eugene also contended that it was inadmissible for the Government's failure to give notice under Rule 404(b)(3) of the Federal Rules of Evidence and unfairly prejudicial under Rule 403 of the Federal Rules of Evidence.

The jury convicted Eugene of racketeering conspiracy, 18 U.S.C. § 1962(d), murder in aid of racketeering, 18 U.S.C. § 1959(a)(1), use of a firearm resulting in death, 18 U.S.C. § 924(j), three counts of attempted murder in aid of racketeering activity, 18 U.S.C. § 1959(a)(5), and two counts of using or carrying a firearm in relation to a federal crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii) and (iii). Eugene then moved for a judgment of acquittal or a new trial, where he again argued that evidence of the plot to kill Williams was inadmissible and added that the verdict was against the weight of the evidence. The Court denied the motion and, a month later, sentenced Eugene to life imprisonment plus a consecutive term of thirty years' imprisonment.

This timely appeal followed.

3

II[1]

Eugene makes two arguments on appeal. First, he argues that the District Court erroneously denied his motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure because "[t]he verdict went against the manifest weight" of the evidence. Eugene Br. 19. Second, he contends that the District Court erroneously admitted evidence of the plot to murder Taneisha Williams. We address each argument in turn.

A

We begin with Eugene's argument that the District Court abused its discretion when it denied him a new trial. *See* Fed. R. Crim. P. 33(a) (permitting a district court to grant a new trial in "the interest of justice"). He notes that the case against him "was built almost entirely upon the testimony of [Brown, a] cooperating witness," which was "substantially impeached on a number of fronts." Eugene Br. 21. He is right about that. But the job of evaluating a witness's credibility is "first and foremost" for the jury. *United States v. Brennan*, 326 F.3d 176, 191 (3d Cir. 2003); *see also United States v. Perez*, 280 F.3d 318, 344 (3d Cir. 2002) ("[U]ncorroborated accomplice testimony may . . . provide the exclusive basis for a criminal conviction.") (quoting *United States v. De Larosa*, 450 F.2d 1057, 1060 (3d Cir. 1971)).

---

[1] The District Court had jurisdiction under 48 U.S.C. § 1612(a) and 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's denial of a Rule 33 motion and its evidentiary rulings for abuse of discretion. *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008); *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010).

Brown testified that he was a longtime member of the Girard enterprise. He also testified about the enterprise's operations and Eugene's participation therein. While doing so, Brown brought with him the baggage of a cooperating witness. Both his deal to testify for the Government in exchange for a more lenient sentencing recommendation and his past crimes tended to undermine his credibility. Yet the jury believed Brown, as was its prerogative. And the District Court could override that decision only "if it believe[d] that there [was] a serious danger that a miscarriage of justice [had] occurred—that is, that an innocent person [had] been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation marks omitted). The District Court, which witnessed Brown's testimony, saw no such danger and thus denied Eugene's motion. In doing so, it did not abuse its discretion.

## B

We turn next to Eugene's evidentiary challenges. He argues that evidence of the plot to kill Williams was inadmissible under Rule 404(b) because it was prior-bad-act evidence of which the Government failed to give notice before trial. He also contends that evidence was inadmissible under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice.[2]

### 1

Rule 404(b), which constrains the admission of certain evidence of prior bad acts,

---

[2] Eugene briefly refers to other recorded calls to which he objected at trial, but he has forfeited any appellate challenge to their admission by failing to explain how the District Court erred in admitting them. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017).

does not apply to evidence that is "intrinsic" to the charged offense. *United States v. Gibbs*, 190 F.3d 188, 217 (3d Cir. 1999). Evidence is "intrinsic" if it "directly proves the charged offense" or if the evidenced acts were "performed contemporaneously with the charged crime" and "facilitate[d] the commission of the charged crime." *Green*, 617 F.3d at 248–49 (internal quotation marks omitted). In conspiracy cases (like Eugene's), evidence of uncharged acts done in furtherance of the conspiracy is direct proof of the charged offense. *Gibbs*, 190 F.3d at 217–18; *see also United States v. John-Baptiste*, 747 F.3d 186, 207 (3d Cir. 2014) (listing the elements of racketeering conspiracy).

The indictment charged Eugene with conspiring to pursue the Girard enterprise's objectives, which included threatening and intimidating the rival gang led by Ivan James. The enterprise planned to kill Taneisha Williams to further that objective, so Eugene's participation in the plot directly proved his guilt of conspiracy. Eugene unpersuasively attempts to characterize the murder plot as a separate, uncharged conspiracy to vindicate a personal dispute between Girard and his ex-girlfriend. Whatever Girard's personal feelings toward Williams, he made clear on the recorded telephone calls that he wanted her dead because she was "working with the enemies" and "riding with the other team." Supp. App. 537, 547. So the evidence of Eugene's role in the Williams murder plot was intrinsic to the charged crime of conspiracy.

2

Evidence is excludable "if its probative value is substantially outweighed by a danger of," *inter alia*, "unfair prejudice," Fed. R. Evid. 403, which means the tendency to "lure" the jury into convicting on some basis other than guilt of the crime charged, *Old*

6

*Chief v. United States*, 519 U.S. 172, 180 (1997). Here, evidence of the plot to kill Williams was, as explained, probative of Eugene's role in the Girard enterprise. That evidence was particularly weighty because, as Eugene points out, the Government's only other source of evidence against him was Brown's testimony.

Eugene argues that the probative value was substantially outweighed by the risk that the "coldness and calculation of the . . . plot" and his "unhesitant agreement to help" would "inspir[e] . . . revulsion" in the jury. Eugene Br. 30–31. He relies on our decision in *United States v. Bailey*, 840 F.3d 99 (3d Cir. 2016), where we held that a district court should have excluded video evidence of a shooting we described as "brutal." *Id.* at 117. Eugene's reliance on *Bailey* is misplaced. In that case, we held that a district court should have excluded one *type* of evidence because the government had proven the fact it wished to prove through less evocative means. *Id.* at 123. By contrast, Eugene sought exclusion of the recordings not because they were especially evocative but because the events they tended to prove might be. Though the jury may have been moved by the "coldness and calculation" exhibited by the plot to kill Williams and by Eugene's "unhesitant agreement" to do so, those features also made the evidence highly probative of guilt. Eugene's willingness to kill Williams for merely associating with the enterprise's rivals tended to show that he was a loyal soldier for the enterprise.

Like the District Court, we conclude that the evidence created no serious risk that the jury convicted Eugene for some reason other than guilt of the charged crime, let alone a risk that substantially outweighed the evidence's probative value.

\* \* \*

For the reasons stated, we will affirm the judgment of conviction.